JOHN T. JASNOCH (CA 281605)
HAL CUNNIGHAM (CA 243048)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565
jjasnoch@scott-scott.com
hcunningham@scott-scott.com

*Counsel for Plaintiff Philip Golubowski and the Proposed Class*

[Additional counsel on signature page.]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP GOLUBOWSKI, Individually and on Behalf of All Others Similarly Situated, | Case No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| ROBINHOOD MARKETS, INC., VLADIMIR TENEV, JASON WARNICK, BAIJU BHATT, JAN HAMMER, PAULA LOOP, JONATHAN RUBENSTEIN, SCOTT SANDELL, ROBERT ZOELLICK, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, BARCLAYS CAPITAL INC., WELLS FARGO SECURITIES, LLC, MIZUHO SECURITIES USA LLC, JMP SECURITIES LLC, KEYBANC CAPITAL MARKETS INC., PIPER SANDLER & CO., ROSENBLATT SECURITIES INC., BMO CAPITAL MARKETS CORP., BTIG, LLC, SANTANDER INVESTMENT SECURITIES INC., ACADEMY SECURITIES, INC., LOOP CAPITAL MARKETS LLC, SAMUEL A. RAMIREZ & COMPANY, INC., and SIEBERT WILLIAMS SHANK & CO., LLC, | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

1       Plaintiff Philip Golubowski ("Plaintiff") makes the following allegations, individually and

2  on behalf of all others similarly situated, by and through Plaintiff's counsel, upon information and

3  belief, except as to those allegations concerning Plaintiff, which are alleged upon personal

4  knowledge.  Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation,

5  which included, among other things, review and analysis of: (i) regulatory filings made by

6  Robinhood Markets, Inc. ("Robinhood" or the "Company") with the United States Securities and

7  Exchange Commission ("SEC"); (ii) press releases and media reports issued by and disseminated

8  by the Company; and (iii) analyst reports, media reports, and other publicly disclosed reports and

9  information about the Company.  Plaintiff believes that substantial evidentiary support will exist

10  for the allegations set forth herein after a reasonable opportunity for discovery.

11                     **NATURE AND SUMMARY OF THE ACTION**

12       1.     Plaintiff brings this federal class action under §§11, 12, and 15 of the Securities Act

13  of 1933 ("Securities Act") against (i) Robinhood, (ii) certain of the Company's senior executives

14  and directors who signed the Registration Statement, effective July 28, 2021, issued in connection

15  with the Company's initial public offering (the "IPO" or the "Offering"), and the underwriters of

16  the Offering.  Plaintiff alleges that the Registration Statement and Prospectus (filed with the SEC

17  on July 1, 2021 and July 30, 2021, respectively), including all amendments thereto, contained

18  materially incorrect or misleading statements and/or omitted material information that was

19  required by law to be disclosed.  Defendants are each strictly liable for such misstatements and

20  omissions therefrom (subject only to their ability to establish a "due diligence" affirmative

21  defense) and as so liable in their capacities as signers of the Registration Statement and/or as an

22  issuer, statutory seller, and/or offeror of the shares sold pursuant to the Offering.

23       2.     Robinhood Markets, Inc. is a financial services company headquartered in Menlo

24  Park, California, known for pioneering commission-free trades of stocks, exchange-traded funds

25  ("ETFs") and cryptocurrencies via a mobile app.

26       3.     On or about July 30, 2021, Robinhood conducted its IPO, offering 55 million shares

27  of its common stock to the public at a price of $38 per share (the "Offering Price") for anticipated

28  proceeds of over $2 billion.

4. According to the Offering Documents, Robinhood is a "*safety-first company*" with a "*radical customer focus*."  It claims to be committed to: (1) "*quality execution*," supposedly "performing regular and rigorous reviews of the execution quality [ ] customers receive;" (2) maintaining "*high security standards*" to keep customers' accounts safe; and (3) providing "dedicated support," to customers to resolve their issues swiftly.  According to the Offering Documents, these commitments, its "fresh, *people-centric approach*," and "*delightful, engaging customer experience*," has led Robinhood to build "*deep, loyal customer relationships*" and has positioned the Company well to "*continue* attracting new people to [the] platform" and "*accelerate* [ ] *growth*."

5. Unbeknownst to investors, however, these representations (and others discussed herein) were materially inaccurate, misleading, and/or incomplete because they failed to disclose that, at the time of the IPO, Robinhood's revenue growth was experiencing a major reversal, with transaction-based revenues from cryptocurrency trading serving only as a short-term, transitory injection, masking what was actually stagnating growth.  In addition, the Company's "significant investments" in enhancing the reliability and scalability of its platform were patently inadequate and/or defective, exposing Robinhood to worsening service-level disruptions and security breaches, particularly as the Company scaled its services to a larger user base.

6. As these true facts emerged after the Offering, the Company's shares fell sharply. By the commencement of this action, Robinhood's shares traded as low as $17.08 per share, representing a decline of over 55% from the Offering Price.

7. By this action, Plaintiff, on behalf of himself and other members of the Class (defined below) who also acquired Robinhood's shares pursuant and traceable to the Offering, now seeks to obtain a recovery for the damages suffered as a result of Defendants' violations of the Securities Act, as alleged herein.

8. The claims asserted herein are purely strict liability and negligence claims.  Plaintiff expressly eschews any allegation sounding in fraud.

**JURISDICTION AND VENUE**

9.     The claims asserted herein arise under and pursuant to §§11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§77k, 77*l*(a)(2), and 77o, respectively.

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and §22 of the Securities Act, 15 U.S.C. §77v.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the acts and transactions giving rise to the violations of law complained of occurred, in part, in this District, including the dissemination of false and misleading statements into this District, certain Defendants reside and/or transact business in this District, and the Company maintains its corporate headquarters in this District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

13.     **Divisional Assignment**: This action should be assigned to the San Francisco Division of this Court, as the Company is headquartered in San Mateo County, California, under Local Rule 3-2(d).

**PARTIES**

**A.     Plaintiff**

14.     Plaintiff, as set forth in his accompanying certification, purchased shares of the Company's common stock that were issued pursuant and traceable to the Registration Statement and Offering, and was damaged thereby.

**B.     Defendants**

**1.     The Company**

15.     Defendant Robinhood is a Menlo Park, California-based company that provides a vehicle through which people can buy and sell stocks, ETFs and cryptocurrencies.  Incorporated under the laws of the state of Delaware, Robinhood maintains its principle executive offices at 85

1    Willow Road, Menlo Park, California 94025.   Robinhood's common stock is listed on the

2    NASDAQ under the ticker symbol "HOOD."

3         **2.       The Individual Defendants**

4         16.      Defendant Vladimir Tenev ("Tenev") is, and was at all relevant times, Co-Founder,

5    Chief Executive Officer ("CEO"), and President of Robinhood, as well as a director on the

6    Company's Board of Directors (the "Board").   Defendant Tenev reviewed, approved, and

7    participated in making statements in the Offering Documents, which he signed.

8         17.      Defendant Jason Warnick ("Warnick") is, and was at all relevant times,

9    Robinhood's Chief Financial Officer ("CFO").   Defendant Warnick reviewed, approved and

10   participated in making statements in the Offering Documents, which he signed.

11        18.      Defendant Baiju Bhatt ("Bhatt") is, and was at all relevant times, Co-Founder and

12   Chief Creative Officer of Robinhood, as well as a director on the Board.   Defendant Bhatt

13   reviewed, approved, and participated in making statements in the Offering Documents, which he

14   signed.

15        19.      Defendant Jan Hammer ("Hammer") is, and was at all relevant times, a director on

16   the Board.  Defendant Hammer reviewed, approved, and participated in making statements in the

17   Offering Documents, which he signed.

18        20.      Defendant Paula Loop ("Loop") is, and was at all relevant times, a director on the

19   Board.  Defendant Loop reviewed, approved, and participated in making statements in the Offering

20   Documents, which she signed.

21        21.      Defendant Jonathan Rubenstein ("Rubenstein") is, and was at all relevant times, a

22   director on the Board.  Defendant Rubenstein reviewed, approved, and participated in making

23   statements in the Offering Documents, which he signed.

24        22.      Defendant Scott Sandell ("Sandell") is, and was at all relevant times, a director on

25   the Board.  Defendant Sandell reviewed, approved, and participated in making statements in the

26   Offering Documents, which he signed.

27

28

23.     Defendant Robert Zoellick ("Zoellick") is, and was at all relevant times, a director on the Board.  Defendant Zoellick reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

24.     Defendants Tenev, Warnick, Bhatt, Hammer, Loop, Rubenstein, Sandell, and Zoellick are collectively referred to herein as the "Individual Defendants."

### 3.     The Underwriter Defendants

25.     The Underwriter Defendants were also instrumental in soliciting investors and in making the Robinhood shares that were offered and sold in or traceable to the IPO available to Plaintiff and the other members of the Class.  The table below lists each of the Underwriter Defendants, together with the number of allotted shares that each sold in the IPO:

| Name | Number of Shares |
| --- | --- |
| Goldman Sachs & Co. LLC | 16,716,315 |
| J.P. Morgan Securities LLC | 15,671,645 |
| Barclays Capital Inc. | 6,268,680 |
| Citigroup Global Markets Inc. | 6,268,680 |
| Wells Fargo Securities, LLC | 6,268,680 |
| Mizuho Securities USA LLC | 568,040 |
| JMP Securities LLC | 426.030 |
| KeyBanc Capital Markets Inc. | 426.030 |
| Piper Sandler & Co. | 426.030 |
| Rosenblatt Securities Inc. | 426.030 |
| BMO Capital Markets Corp. | 284,020 |
| BTIG, LLC | 284,020 |
| Santander Investment Securities Inc. | 284,020 |
| Academy Securities, Inc. | 170,445 |
| Loop Capital Markets LLC | 170,445 |
| Samuel A. Ramirez & Company, Inc. | 170,445 |
| Siebert Williams Shank & Co., LLC | 170,445 |

26.     Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  Goldman Sachs acted as a representative of all the underwriters.  Goldman Sachs also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Goldman Sachs' participation in and its solicitation of offers in connection

5

with the IPO was motivated by its financial interests.  Defendant Goldman Sachs conducts business in this District.

27.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  J.P. Morgan acted as a representative of all the underwriters.  J.P. Morgan also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  J.P. Morgan's participation in and its solicitation of offers in connection with the IPO was motivated by its financial interests.  Defendant J.P. Morgan conducts business in this District.

28.     Defendant Barclays Capital Inc. ("Barclays") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  Barclays participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Barclays' participation in and its solicitation of offers in connection with the IPO was motivated by its financial interests.  Defendant Barclays conducts business in this District.

29.     Defendant Citigroup Global Markets Inc. ("Citigroup") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  Citigroup participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Citigroup's participation in and its solicitation of offers in connection with the IPO was motivated by its financial interests.  Defendant Citigroup conducts business in this District.

30.     Defendant Wells Fargo Securities, LLC ("Wells Fargo") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  Wells Fargo participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Well Fargo's participation in and its solicitation of offers in connection with the IPO was motivated by its financial interests.  Defendant Wells Fargo conducts business in this District.

31.     Defendant Mizuho Securities USA LLC ("Mizuho") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  Mizuho participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Mizuho's participation in and its solicitation of offers in connection with the IPO was motivated by its financial interests.  Defendant Mizuho conducts business in this District.

32.     Defendant JMP Securities LLC ("JMP") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.   JMP participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  JMP's participation in and its solicitation of offers in connection with the IPO was motivated by its financial interests.  Defendant JMP conducts business in this District.

33.     Defendant KeyBanc Capital Markets Inc. ("KeyBanc") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  KeyBanc participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including

1   lodging and travel, among other expenses.  KeyBanc's participation in and its solicitation of offers

2   in connection with the IPO was motivated by its financial interests.  Defendant KeyBanc conducts

3   business in this District.

4          34.     Defendant Piper Sandler & Co. ("Piper Sandler") was an underwriter of the

5   Company's IPO, serving as a financial advisor for and assisting in the preparation and

6   dissemination of the Company's material inaccurate, misleading, and incomplete Offering

7   Documents.  Piper Sandler participated in conducting and promoting the roadshow for the IPO and

8   paying for the expenses of the Individual Defendants who participated in the roadshow, including

9   lodging and travel, among other expenses.  Piper Sandler's participation in and its solicitation of

10  offers in connection with the IPO was motivated by its financial interests.  Defendant Piper Sandler

11  conducts business in this District.

12         35.     Defendant Rosenblatt Securities Inc. ("Rosenblatt") was an underwriter of the

13  Company's IPO, serving as a financial advisor for and assisting in the preparation and

14  dissemination of the Company's material inaccurate, misleading, and incomplete Offering

15  Documents.  Rosenblatt participated in conducting and promoting the roadshow for the IPO and

16  paying for the expenses of the Individual Defendants who participated in the roadshow, including

17  lodging and travel, among other expenses.  Rosenblatt's participation in and its solicitation of

18  offers in connection with the IPO was motivated by its financial interests.  Defendant Rosenblatt

19  conducts business in this District.

20         36.     Defendant BMO Capital Markets Corp. ("BMO") was an underwriter of the

21  Company's IPO, serving as a financial advisor for and assisting in the preparation and

22  dissemination of the Company's material inaccurate, misleading, and incomplete Offering

23  Documents.  BMO participated in conducting and promoting the roadshow for the IPO and paying

24  for the expenses of the Individual Defendants who participated in the roadshow, including lodging

25  and travel, among other expenses.  BMO's participation in and its solicitation of offers in

26  connection with the IPO was motivated by its financial interests.  Defendant BMO conducts

27  business in this District.

28

37.     Defendant BTIG, LLC ("BTIG") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.   BTIG participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  BTIG's participation in and its solicitation of offers in connection with the IPO was motivated by its financial interests.  Defendant BTIG conducts business in this District.

38.     Defendant Santander Investment Securities Inc. ("Santander") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  Santander participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Santander's participation in and its solicitation of offers in connection with the IPO was motivated by its financial interests.  Defendant Santander conducts business in this District.

39.     Defendant Academy Securities, Inc. ("Academy") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  Academy participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Academy's participation in and its solicitation of offers in connection with the IPO was motivated by its financial interests.  Defendant Academy conducts business in this District.

40.     Defendant Loop Capital Markets LLC ("Loop Capital") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  Loop Capital participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including

lodging and travel, among other expenses.  Loop Capital's participation in and its solicitation of offers in connection with the IPO was motivated by its financial interests.  Defendant Loop Capital conducts business in this District.

41.     Defendant Samuel A. Ramirez & Company, Inc. ("Ramirez") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  Ramirez participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Ramirez's participation in and its solicitation of offers in connection with the IPO was motivated by its financial interests.  Defendant Ramirez conducts business in this District.

42.     Defendant Siebert Williams Shank & Co., LLC ("Siebert") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  Siebert participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Siebert's participation in and its solicitation of offers in connection with the IPO was motivated by its financial interests.  Defendant Siebert conducts business in this District.

43.     Defendants listed in ¶¶26-42 are collectively referred to herein as the "Underwriter Defendants."

44.     Pursuant to the Securities Act, each Underwriter Defendant is liable for the materially inaccurate, misleading, and incomplete statements in the Offering Documents.  In addition, although not an element of Plaintiff's claims and an issue on which each Underwriter Defendant bears the burden of proof to the extent it seeks to assert it as an affirmative defense, no Underwriter Defendant conducted an adequate due diligence investigation in connection with the matters alleged herein and will accordingly be unable to establish a statutory "due diligence"

affirmative defense under the Securities Act.  Each Underwriter Defendant committed acts and omissions that were a substantial factor leading to the harm complained of herein.

45.     Each Underwriter Defendant named herein is an investment banking firm whose activities include, *inter alia*, the underwriting of public offerings of securities.  As the underwriters of the IPO, the Underwriter Defendants earned lucrative underwriting fees.

46.     As underwriters, the Underwriter Defendants met with potential investors in the IPO and presented highly favorable, but materially incorrect and/or materially misleading, information about the Company, its business, products, plans, and financial prospects, and/or omitted to disclose material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

47.     Representatives of the Underwriter Defendants also assisted Robinhood and the Individual Defendants in planning the IPO.  They further purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of the Company, an undertaking known as a "due diligence" investigation.  During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning the Company's business, financial condition, products, plans, and prospects.

48.     In addition to having access to internal corporate documents, the Underwriter Defendants and/or their agents, including their counsel, had access to Robinhood's management, directors, and lawyers to determine: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Robinhood's common stock would be sold; (iii) the language to be used in the Offering Documents; (iv) what disclosures about Robinhood would be made in the Offering Materials; and (v) what responses would be made to the SEC in connection with its review of the Offering Materials.  As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Robinhood's management, directors, and lawyers, at a minimum, the Underwriter Defendants should have known of Robinhood's undisclosed then-existing problems and plans, and the Offering Document's materially inaccurate, misleading, and incomplete statements and omissions, as detailed herein.

49.     The Underwriter Defendants also demanded and obtained an agreement from Robinhood under which Robinhood agreed to indemnify and hold the Underwriter Defendants harmless from any liability under the Securities Act.

50.     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the IPO, so that they, and the Individual Defendants, could offer to sell, and sell, Robinhood shares to Plaintiff and other members of the Class pursuant (or traceable) to the Offering Documents.

## SUBSTANTIVE ALLEGATIONS

### A.     Robinhood's Initial Public Offering and False and/or Misleading Offering Documents

51.     On July 1, 2021, Robinhood filed with the SEC a draft registration statement on Form S-1, which would be used for the IPO following a series of amendments in response to SEC comments.  On July 25, 2021, Robinhood filed its final amendment to the Registration Statement, which registered 60.5 million Robinhood shares for public sale, including 5.5 million shares that the Underwriter Defendants had the option to purchase, solely to cover over-allotments.  The SEC declared the Registration Statement effective on July 28, 2021.  On July 30, 2021, Defendants priced the IPO at $38 per share and filed the final Prospectus for the IPO, which forms part of the Registration Statement.

52.     The Offering Documents were negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

53.     According to the Offering Documents, Robinhood's significant growth, technology, and commitment to providing users a highly accessible and safe trading experience is what "sets [it] apart," from others in the financial services ecosystem.

54.     Robinhood defines itself as a "*safety-first company*" with a "*radical customer focus*."  It claims to be committed to: (1) "*quality execution*," supposedly "performing regular and rigorous reviews of the execution quality [ ] customers receive;" (2) maintaining "*high security*

*standards*" to keep customers' accounts safe; and (3) providing "dedicated support," to customers to resolve their issues swiftly.  It also claims to have "made, and continue to make, significant investments designed to *enhance the reliability and scalability* of [its] platform and operations as well as [its] customer support functions."  Together, according to the Offering Documents, these efforts and commitments, its "fresh, *people-centric approach*," and "*delightful, engaging customer experience*," has led Robinhood to build "*deep, loyal customer relationships*" and has positioned the Company well to "continue attracting new people to [the] platform" and "accelerate [ ] growth."

55.     With respect to Robinhood's growth, the Offering Documents applaud the increase observed in the Company's transaction-based revenue in the lead up to the IPO.  According to the Offering Documents, Robinhood earned over $720 million in transaction-based revenue by year end 2020, which was four times greater than what it achieved the prior year and reported over $420 million in transaction-based revenue in just the first quarter of 2021 alone, setting up 2021 to be a record year.

56.     The Offering Documents also highlighted the growth observed in certain key performance indicators, to support the notion that the Company's financial health was strong at the time of the IPO (and would remain strong well into the future).  Among other things, the Offering Documents flaunted Robinhood's "Net Cumulative Funded Accounts," which were 12.5 million and 18 million for FY20 and 1Q21, respectively, "Monthly Active Users" (MAU), which were 11.7 million and 17.7 million for FY20 and 1Q21, respectively, and Average Revenues Per User (ARPU), which equaled $108.90 and $137.00 for FY20 and 1Q21, respectively.  The Offering Documents also highlighted Robinhood's "Assets Under Custody" (AUC), which equaled nearly $63 billion and over $80 billion for FY20 and 1Q21, respectively, noting in particular how cryptocurrencies comprised a significant portion of Robinhood's AUCs in the lead up to the IPO, rising from over $414 million in FY19, to over $3.5 billion by year end 2020, and a remarkable $11.6 billion in the first quarter of 2021 alone.

57.     The Offering Documents, however, were false and misleading and omitted to state that, *at the time of the Offering*, Robinhood's revenue growth was, in fact, experiencing a major

reversal, with transaction-based revenues from cryptocurrency trading serving only as a short-term, transitory injection, effectively masking what was stagnating growth.  Further, that the Company's "significant investments designed to *enhance the reliability and scalability* of [its] platform" were patently inadequate and/or defective, which exposed the platform to worsening service-level disruptions and security breaches, particularly as the Company scaled its services to a larger user base.

58.    Defendants were required to disclose this material information in the Offering Documents for at least three independent reasons.  First, SEC Regulation S-K, 17 C.F.R. §229.303 (Item 303), required disclosure of any known events or uncertainties that at the time of the Offering had caused, or were reasonably likely to cause, Robinhood's disclosed financial information not to be indicative of future operating results.  At the time of the Offering, Robinhood possessed information showing that its revenue growth was experiencing a major reversal, with transaction-based revenues from cryptocurrency transactions serving as a one-time, transitory injection, effectively masking what was in fact another quarter of lackluster growth, and, further, that the investments made to enhance the reliability and scalability of the platform, particularly as the platform continued to grow, were patently insufficient, exposing Robinhood to service-level technical issues and data security breaches that disrupted users' ability to access their accounts and/or retain control over their personal information, which, as a result, negatively impacted the Company's ability to generate revenue.  These undisclosed negative events and trends were likely to (and in fact, did) materially and adversely affect Robinhood's financial state and rendered the disclosed results and trends in the Offering Documents misleading and not indicative of the Company's future operating results.

59.    Second, SEC Regulation S-K, 17 C.F.R. §229.105 (Item 105), required, in the "Risk Factor" section of the Offering Documents, a discussion of the most significant factors that make the offering risky or speculative, and that each risk factor adequately describe the risk.  Robinhood's discussion of risk factors did not adequately describe the risk posed by the Company's deficient efforts to enhance the reliability and scalability of its platform, which, in turn, impacted customers' ability to access their accounts, execute transactions, and control their

1 | personal information, and the negative impact such was already having (or would have) on

2 | Robinhood's business, nor the other already occurring negative results and trends, nor the likely

3 | and consequent materially adverse effects on the Company's future results, share price, and

4 | prospects.

5 | 60. Third, Defendants' failure to disclose the aforementioned material information

6 | rendered false and misleading the Offering Documents' many references to known risks that, "if"

7 | occurring "might" or "could" affect the Company. As the Company eventually revealed, these

8 | "risks" had already materialized at the time of the Offering.

9 | **B. Events and Disclosures Following the Offering**

10 | 61. On October 26, 2021, after the markets closed, Robinhood reported its third quarter

11 | 2021 financial results, revealing that its total net revenue for the period between July 1, 2021

12 | through September 30, 2021 — the same period during which the Company conducted its IPO —

13 | came in at $365 million, badly missing analyst estimates by nearly $73 million, and declines in its

14 | monthly active users ("MAUs"), funded accounts, assets under custody ("AUC"), and average

15 | revenue per user ("ARPU"). Robinhood also disclosed that third-quarter transaction-based

16 | revenue from cryptocurrency trading, which in the lead up to the IPO had been the bulk of the

17 | Company's revenues, was a measly $51 million, staggeringly below the $233 million Robinhood

18 | earned from crypto trading in the second quarter. The proportion of Robinhood's cryptocurrency

19 | transaction-based revenue generated by Dogecoin alone fell 40% in Q3, with Robinhood only

20 | generating $20.4 million in Q3 compared to ~$144.5 million in Q2. At the same time, Robinhood's

21 | net losses skyrocketed from $11 million to $1.32 billion due to a remarkable $1.24 billion stock-

22 | based compensation expense that was tied to the stock's post-IPO performance, and its initial rally

23 | – which boosted its shares to an all-time high of $85 a share on August 4, 2021 and triggered a

24 | massive payout to Defendants Tenev and Bhatt. To make matters worse, Robinhood also guided

25 | for "less than $1.8 billion" in revenue for the full year, implying a maximum 85% growth, which

26 | fell well short of analyst expectations of 111%.

27 | 62. Analysts immediately took note with those at J.P. Morgan, for example,

28 | downgrading their price target and characterizing the Company's trading revenue as a

"disappoint[ment]," noting in particular how "equity trading was particularly weak, down both sequentially and YoY despite a near doubling of accounts and MTUs" and how "[c]rypto trading revenue fell 78%, down more than the crypto industry average of ~40% and the decline of Dogecoin trading of ~75%[,]" before concluding "we believe Robinhood has been overearning and guidance will weaken for '22."  J.P. Morgan also questioned why management "did not disclose trading volumes," finding it "peculiar for a company generating ~75% of revenue on volumes," but, nonetheless, suspecting "revenue per trade had been elevated [indicating] a weaker business outlook."

63.    On this news, Robinhood's stock declined nearly 10.5%, falling from $39.57 per share on October 26, 2021 to close at $35.44 per share on October 27, 2021.

64.    Then, on November 8, 2021, after the markets closed, Robinhood disclosed that it had suffered a "data security incident" on November 3, 2021, admitting that an "unauthorized third party" had obtained email addresses for approximately five million users and the full names of a different group of about two million users, indicating that the attack potentially affected nearly 40% of Robinhood's MAUs.  What is more, Robinhood said the additional personal information of 310 other users, including their names, dates of birth, and zip codes, were exposed, and within that group, that 10 users suffered even "more extensive" breaches.

65.    On this news, Robinhood's stock declined further, falling over 3% on November 9, 2021 to close at $36.70 per share, before then falling another 6% to close at $34.49 the very next day.

66.    By the time this case was filed, and after Robinhood announced investigations into reports of bank transfer issues and issues with customers accessing their accounts, the Company's stock traded as low as $17.08 per share, or over 55% below the $38 IPO offering price.



**CLASS ACTION ALLEGATIONS**

67.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68.     Plaintiff brings this action as a class action, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class consisting of all persons and entities that purchased, or otherwise acquired, Robinhood common stock issued in connection with the Company's IPO.

69.     Excluded from the Class are: (i) Defendants; (ii) present or former executive officers of Robinhood, members of the Robinhood's Board, and members of their immediate families (as defined in 17 C.F.R. §229.404, Instructions (1)(a)(iii) and (1)(b)(ii)); (iii) any of the foregoing persons' legal representatives, heirs, successors, or assigns; and (iv) any entities in which Defendants have or had a controlling interest, or any affiliate of Robinhood.

70.     The members of the Class are so numerous that joinder of all members is impracticable.  The Company's common stock was actively traded on the NYSE, a national securities exchange.  While the exact number of Class members is unknown to Plaintiff at this

1    time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are

2    hundreds or thousands of members in the Class.  During the relevant time, millions of Robinhood

3    shares were publicly traded on the NASDAQ.  Record owners and other members of the Class

4    may be identified from records maintained by Robinhood or its transfer agent and may be notified

5    of the pendency of this action by mail, using a form of notice similar to that customarily used in

6    securities class actions.

7        71.    Plaintiff's claims are typical of the claims of Class members, who were all similarly

8    affected by Defendants' wrongful conduct in violation of the federal securities laws.  Further,

9    Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel

10    competent and experienced in class and securities litigation.

11        72.    Common questions of law and fact exist as to all members of the Class and

12    predominate over any questions solely affecting individual members of the Class.  Among the

13    questions of law and fact common to the members of the Class are:

14            (a)    whether Defendants violated the Securities Act;

15            (b)    whether statements made by Defendants to the investing public

16                misrepresented material facts about the business, operations, and prospects

17                of Robinhood;

18            (c)    whether statements made by Defendants to the investing public omitted

19                material facts necessary in order to make the statements made, in light of

20                the circumstances under which they were made, not misleading; and

21            (d)    the extent of damage sustained by Class members and the appropriate

22                measure of damages.

23        73.    A class action is superior to all other available methods for the fair and efficient

24    adjudication of this controversy, since joinder of all members is impracticable.  Further, as the

25    damages suffered by individual Class members may be relatively small, the expense and burden

26    of individual litigation makes it impossible for Class members to individually redress the wrongs

27    done to them.  There will be no difficulty in the management of this action as a class action.

28

## <u>CLAIM ONE</u>

### For Violations of §11 of the Securities Act
### (Against All Defendants)

74.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

75.     This claim is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.  This is a non-fraud cause of action.  Plaintiff does not assert that Defendants committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

76.     The Offering Documents were inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

77.     The Company is the registrant of the securities purchased by Plaintiff and the Class. As such, the Company is strictly liable for the materially inaccurate statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate.  By virtue of the Offering Documents containing material misrepresentations and omissions of material fact necessary to make the statements therein not false and misleading, Robinhood is liable under §11 of the Securities Act to Plaintiff and the Class.

78.     The Individual Defendants each signed the Offering Documents and caused its issuance.  As such, each is strictly liable for the materially inaccurate statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense.  The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Documents and ensure that they were true and accurate, there were no omissions of material facts that would make the Offering Documents misleading, and the documents contained all facts required to be stated therein.  In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Offering Documents and also should have

1  known of the omissions of material fact necessary to make the statements made therein not

2  misleading.  Accordingly, the Individual Defendants are liable to Plaintiff and the Class.

3      79.   The Underwriter Defendants each served as underwriters in connection with the

4  IPO.  As such, each is strictly liable for the materially inaccurate statements contained in the

5  Offering Documents and the failure of the Offering Documents to be complete and accurate, unless

6  they are able to carry their burden of establishing an affirmative "due diligence" defense.  The

7  Underwriter Defendants each had a duty to make a reasonable and diligent investigation of the

8  truthfulness and accuracy of the statements contained in the Offering Documents.  They had a duty

9  to ensure that such statements were true and accurate, there were no omissions of material facts

10 that would make the Offering Documents misleading, and the documents contained all facts

11 required to be stated therein.  In the exercise of reasonable care, the Underwriter Defendants should

12 have known of the material misstatements and omissions contained in the Offering Documents

13 and also should have known of the omissions of material facts necessary to make the statements

14 made therein not misleading.  Accordingly, each of the Underwriter Defendants is liable to

15 Plaintiff and the Class.

16     80.   Defendants acted negligently in preparing the Offering Documents.  None of the

17 Defendants named in this Claim made a reasonable investigation or possess reasonable grounds

18 for the belief that the statements contained in the Offering Documents were true and without

19 omission of any material facts and were not misleading.  In alleging the foregoing, Plaintiff

20 specifically disclaims any allegation of fraud.

21     81.   By reasons of the conduct herein alleged, each Defendant named in this claim

22 violated §11 of the Securities Act.

23     82.   None of the untrue statements or omissions of material fact in the Offering

24 Documents alleged herein was a forward-looking statement.   Rather, each such statement

25 concerned existing facts.  Moreover, the Offering Documents did not properly identify any of the

26 untrue statements as forward-looking statements and did not disclose information that undermined

27 the putative validity of these statements.

28

83.     Plaintiff acquired the Company's securities pursuant or traceable to the Offering Documents and without knowledge of the untruths and/or omissions alleged herein.   Plaintiff sustained damages, and the price of the Company's shares declined substantially due to material misstatements in the Offering Documents.

84.     This Claim is brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

85.     By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under §11, as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally.

**CLAIM TWO**

**For Violations of §12(a) of the Securities Act**
**(Against All Defendants)**

86.     Plaintiff repeats and realleges each and every allegation contained above, as if fully set forth herein.

87.     By means of the defective Prospectus, Defendants promoted, solicited, and sold Robinhood shares to Plaintiff and other members of the Class.

88.     The Prospectus for the IPO contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above.  Defendants owed Plaintiff, and the other members of the Class who purchased Robinhood shares pursuant to the Prospectus, the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus, to ensure that such statements were true and that there was no omission to state a material fact required to be stated, in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus, as set forth above.

89.     Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired Robinhood shares.

90.     By reason of the conduct alleged herein, Defendants violated §12(a)(2), 15 U.S.C. §77*l*(a)(2) of the Securities Act.  As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased Robinhood securities, pursuant to the Prospectus, sustained substantial damages in connection with their purchases of the shares.  Accordingly, Plaintiff and the other members of the Class who hold Robinhood securities issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their Robinhood shares to Defendants sued herein.  Class members who have sold their Robinhood securities seek damages to the extent permitted by law.

## CLAIM THREE

### For Violations of §15 of the Securities Act
### (Against the Individual Defendants)

91.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

92.     This claim is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o, on behalf of the Class, against each of the Individual Defendants.

93.     The Individual Defendants were controlling persons of the Company within the meaning of §15 of the Securities Act.  By reason of their ownership interest in, senior management positions at, and/or directorships held at the Company, as alleged above, these Defendants invested in, individually and collectively, and had the power to influence, and exercised same over, the Company to cause it to engage in the conduct complained of herein.  Similarly, each of the other Individual Defendants not only controlled those subject to liability as primary violators of §11 of the Securities Act, as alleged above, they directly participated in controlling Robinhood by having signed, or authorized the signing of, the Registration Statement and authorizing the issuance of Robinhood securities to Plaintiff and members of the Class.

94.     As control persons of Robinhood, each of the Individual Defendants are jointly and severally liable pursuant to §15 of the Securities Act with and to the same extent as Robinhood for its violations of §11 of the Securities Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on Plaintiff's own behalf and on behalf of the Class, prays for relief and judgement as follows:

A.      Declaring that this action is a proper class action, pursuant to Fed. R. Civ. P. 23, certifying Plaintiff as a representative of the Class, and designating Plaintiff's counsel as Class Counsel;

B.      Awarding Plaintiff and the other members of the Class compensatory damages;

C.      Awarding Plaintiff and the other members of the Class rescission on their §12(a)(2) claims;

D.      Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

E.      Awarding Plaintiff and the other members of the Class such other and further relief as the Court may dem just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all issues that may be so tried.

DATED:  December 17, 2021              **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

                                        _s/ John T. Jasnoch_
                                        JOHN T. JASNOCH (CA 281605)
                                        HAL CUNNIGHAM (CA 243048)
                                        600 W. Broadway, Suite 3300
                                        San Diego, CA 92101
                                        Tel.: (619) 233-4565
                                        jjasnoch@scott-scott.com
                                        hcunningham@scott-scott.com

                                        THOMAS L. LAUGHLIN, IV
                                        (*pro hac vice* filed herewith)
                                        **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                        The Helmsley Building
                                        230 Park Avenue, 17th Floor
                                        New York, NY 10169
                                        Tel.: (212) 233-6444
                                        tlaughlin@scott-scott.com

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Counsel for Plaintiff Philip Golubowski and the Proposed Class*

CLASS ACTION COMPLAINT

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, Philip Golubowski, hereby certify that the following is true and correct to the best of my knowledge, information, and belief:

1.  I have reviewed a complaint against Robinhood Markets, Inc. ("Robinhood" or the "Company") and authorize Scott+Scott Attorneys at Law LLP to file a comparable complaint on my behalf.

2.  I am willing to serve as a representative party on behalf of all persons and entities that purchased, or otherwise acquired, Robinhood's common stock pursuant and/or traceable to the Company's public offering held on or about July 30, 2021, including providing testimony at deposition and trial if necessary.

3.  During the relevant period, I purchased and/or sold the security that is the subject of the complaint, as set forth in the attached **Schedule A**.

4.  I did not engage in the foregoing transactions at the direction of counsel nor in order to participate in any private action arising under the Securities Act of 1933 (the "Securities Act") or the Securities Exchange Act of 1934 (the "Exchange Act").

5.  During the three-year period preceding the date of my signing this Certification, I have not sought to serve, or served, as a representative party or lead plaintiff on behalf of a class in any private action arising under the Securities Act or the Exchange Act.

6.  I will not accept any payment for serving as a representative party on behalf of the Class beyond the *pro rata* share of any recovery, except for such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct..

Executed on the 16th of December 2021 at Staten Island, New York.

_____

**PHILIP GOLUBOWSKI**

# Schedule A

**ROBINHOOD MARKETS INC - A**                **Ticker: HOOD**          **Cusip: 770700102**

Class Period: 07/29/2021 to 12/17/2021

**PHILIP GOLUBOWSKI**

| | | DATE | SHARES | PRICE |
|---|---|---|---|---|
| | Purchases: | 7/29/2021 | 242 | $38.00 |
| | | 8/10/2021 | 213 | $54.00 |
| | | 8/11/2021 | 0.395569 | $50.56 |
| | | 8/20/2021 | 13.998365 | $42.82 |
| | | 8/20/2021 | 0.012143 | $42.82 |
| | | 9/3/2021 | 87.92926 | $43.54 |
| | | 9/3/2021 | 0.173773 | $43.50 |
| | | 11/26/2021 | 1.475314 | $27.11 |
| | | 11/29/2021 | 1.691093 | $26.61 |
| | | 12/3/2021 | 4.562043 | $21.92 |
| | | 12/3/2021 | 2.179446 | $22.94 |
| | | 12/3/2021 | 8.679312 | $23.04 |
| | | 12/13/2021 | 17.014425 | $19.40 |
| | | 12/16/2021 | 2.794076 | $17.90 |
| | | 12/16/2021 | 0.362875 | $18.00 |
| | | 12/16/2021 | 29 | $18.00 |
| | Sales: | 8/3/2021 | 242 | $44.60 |
| | | 12/15/2021 | 1 | $18.62 |
| | | 12/15/2021 | 0.330761 | $18.11 |
| | | 12/15/2021 | 41.020867 | $18.30 |