ANTONY L. RYAN (*pro hac vice*)
KEVIN J. ORSINI (*pro hac vice*)
BRITTANY L. SUKIENNIK (*pro hac vice*)
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, NY 10019-7475
Tel:    (212) 474-1000
Fax:    (212) 474-3700
Email: aryan@cravath.com
          korsini@cravath.com
          bsukiennik@cravath.com

MARK R. CONRAD (CA Bar No. 255667)
LIZ KIM (CA Bar No. 295277)
**CONRAD | METLITZKY | KANE LLP**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel:    (415) 343-7100
Fax:    (415) 343-7101
Email: mconrad@conmetkane.com
          lkim@conmetkane.com

Attorneys for ROBINHOOD MARKETS, INC.,
VLADIMIR TENEV, JASON WARNICK,
BAIJU BHATT, JAN HAMMER, PAULA
LOOP, JONATHAN RUBINSTEIN, SCOTT
SANDELL AND ROBERT ZOELLICK

[*Additional parties and counsel in the signature block below.*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PHILIP GOLUBOWSKI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD MARKETS, INC., et al.,<br><br>Defendants. | CASE NO. 3:21-CV-09767-EMC<br><br>**ROBINHOOD DEFENDANTS AND UNDERWRITER DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**<br><br>Judge:          Hon. Edward M. Chen<br>Hearing Date: January 5, 2023<br>Time:            1:30 P.M. |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

I.  PLAINTIFFS DO NOT PLEAD A CLAIM UNDER EITHER SECTION 11 OR SECTION 12(a) OF THE SECURITIES ACT.........................................................3

    A.  Robinhood Did Not Have a Duty to Disclose............................................3

        1.  Robinhood Did Not Violate Item 105............................................3

        2.  Robinhood Did Not Violate Item 303............................................5

    B.  Robinhood Did Not Make False or Misleading Statements. .................................10

        1.  Robinhood Did Not Make Material Misrepresentations About the Potential for a Decline in KPIs. ....................................................10

        2.  Robinhood Did Not Make Material Misrepresentations About the Growth of Its User Base.............................................................12

        3.  Robinhood's Statements About Building Deep, Loyal Customer Relationships Are Non-Actionable. .............................................14

II.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.....................15

CONCLUSION.....................................................................................................................15

CASE NO. 3:21-cv-09767-EMC                     REPLY BRIEF ISO MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008)...............................................................................................11

*Blackmoss Invs. Inc. v. ACA Capital Holdings, Inc.*,
No. 07-cv-10528, 2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) ..................................................6

*City of Pontiac Policemen's and Firemen's Retirement Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)...................................................................................................4

*DeMaria v. Andersen*,
318 F.3d 170 (2d Cir. 2003)................................................................................................11

*Fisher v. Acuson Corp.*,
No. C93-20477, 1995 WL 261439 (N.D. Cal. Apr. 26, 1995) ..................................................12

*Fresno Cnty. Emps' Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017)......................................................................................4

*In re Apple Inc. Sec. Litig.*,
No. 19-cv-2033, 2020 WL 2857397 (N.D. Cal. June 2, 2020).........................................12, 13

*In re Bare Escentuals, Inc. Sec. Litig.*,
745 F. Supp. 2d 1052 (N.D. Cal. 2010) .................................................................................15

*In re Coty, Inc. Sec. Litig.*,
No. 14-cv-919, 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016).................................................6

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010)...............................................................................................15

*In re Donna Karan Int'l Sec. Litig.*,
No. 97-cv-2011, 1998 WL 637547 (E.D.N.Y. Aug. 14, 1998)...........................................8, 10

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
986 F. Supp. 2d 524 (S.D.N.Y. 2014).....................................................................................9

*In re Facebook, Inc. IPO Sec. and Derivative Litig*,
986 F. Supp. 2d 487 (S.D.N.Y. 2013)....................................................................................8, 9

*In re Fastly, Inc. Sec. Litig.*,
No. 20-cv-6024, 2021 WL 5494249 (N.D. Cal. Nov. 23, 2021) .............................................12

*In re Fusion-io, Inc. Sec. Litig.*,
No. 13-cv-5368, 2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ................................................14

*In re Infonet Servs. Corp. Sec. Litig.*,
310 F. Supp. 2d 1080 (C.D. Cal. 2003) ................................................................................14

CASE NO. 3:21-cv-09767-EMC                REPLY BRIEF ISO MOTION TO DISMISS

*In re OmniVision Techs., Inc. Sec. Litig.*,
937 F. Supp. 2d 1090 (N.D. Cal. 2013) ...................................................................................13

*In re Pivotal Sec. Litig.*,
No. 3:19-cv-03589, 2020 WL 4193384 (N.D. Cal. July 21, 2020) .......................................4, 5

*In re Restoration Robotics, Inc. Sec. Litig.*,
417 F. Supp. 3d 1242 (N.D. Cal. 2019) .....................................................................................5

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996)....................................................................................................11

*In re Tempur Sealy Int'l, Inc. Sec. Litig.*,
No. 17-cv-2169, 2019 WL 1368787 (S.D.N.Y. Mar. 26, 2019)...............................................10

*In re Turkcell Iletisim Hizmetler A.S. Sec. Litig.*,
202 F. Supp. 2d 8 (S.D.N.Y. 2001)........................................................................................7, 8

*In re Twitter, Inc. Securities Litigation*,
No. 16-5314, 2020 WL 4187915 (N.D. Cal. Apr. 17, 2020), *reconsideration
denied,* 2021 WL 4166725 (N.D. Cal. Sept. 14, 2021)...........................................................4, 13

*In re Vocera Commc'ns, Inc. Sec. Litig.*,
C-13-3567, 2015 WL 603208 (N.D. Cal. Feb. 11, 2015) (Chen, J.)..........................................6

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994)....................................................................................................7, 8

*Kapps v. Torch Offshore, Inc.*,
379 F.3d 207 (5th Cir. 2004)......................................................................................................6

*Khoja v. Orexigen Therapeutics*,
899 F.3d 988 (9th Cir. 2018)....................................................................................................13

*Litwin v. Blackstone Grp., L.P.*,
634 F.3d 706 (2d Cir. 2011)......................................................................................................9

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016)..................................................................................................11

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)....................................................................................................................3

*Mingbo Cai v. Switch, Inc.*,
No. 2:18-cv-1471, 2019 WL 3065591 (D. Nev. July 12, 2019)................................................4

*Moore v. Apple, Inc.*,
73 F. Supp. 3d 1191 (N.D. Cal. 2014) .....................................................................................10

*Mulligan v. Impax Labs., Inc.*,
36 F. Supp. 3d 942 (N.D. Cal. 2014) .......................................................................................15

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
455 F. App'x 10 (2d Cir. 2011) .................................................................................................4

CASE NO. 3:21-cv-09767-EMC                REPLY BRIEF ISO MOTION TO DISMISS

*Nguyen v. MaxPoint Interactive, Inc.*,
    234 F. Supp. 3d 540 (S.D.N.Y. 2017)............................................................................6, 8

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014)...........................................................................................15

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
    297 F.3d 1182 (11th Cir. 2002)..........................................................................................5

*Pirani v. Slack Tech., Inc.*,
    445 F. Supp. 3d 367 (N.D. Cal. 2020) ...............................................................................7

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014)..........................................................................................15

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998)............................................................................................8

*Westley v. Oclaro, Inc.*,
    897 F. Supp. 2d 902 (N.D. Cal. 2012) (Chen, J.).............................................................14

**Other Authorities**

17 C.F.R. § 210.3-01(a) ...........................................................................................................7

17 C.F.R. § 210.5-03...............................................................................................................8

17 C.F.R. § 229.105 .......................................................................................................*passim*

17 C.F.R. § 229.303 .......................................................................................................*passim*

SEC, *Management's Discussion and Analysis of Financial Condition and Results of
Operations*, 54 Fed. Reg. 22,427, 22,428 (May 24, 1989) .........................................7

CASE NO. 3:21-cv-09767-EMC          REPLY BRIEF ISO MOTION TO DISMISS

**INTRODUCTION**

Plaintiffs have all but abandoned their claims that Robinhood's Offering Documents contained misrepresentations.  They now rely almost exclusively on the argument that Robinhood had an affirmative duty under Item 105 or Item 303 of Regulation S-K to disclose alleged *intra-quarter* declines in certain key performance indicators ("KPIs").  Plaintiffs' case thus hinges on the alleged non-disclosure of significant negative "trends."  But the alleged "trends" did not exist at the time of the IPO.  Plaintiffs concede that Robinhood accurately reported *growth* in its KPIs in Q1 of 2021.  Plaintiffs also concede that Robinhood's estimated preliminary results for Q2, the quarter that ended shortly before the IPO, showed overall *growth*.  And Plaintiffs themselves allege facts showing intra-quarter *increases* in two of the three monthly KPIs (AUC and NCFA) in June, the month right before the IPO in July.  What does that leave to support Plaintiffs' claims of "significant" declines constituting a trend?  A mere decline for a single full month (June) in just one KPI (MAU) and cryptocurrency trading volume, and declines in several KPIs for the partial month of July.  (Am. Compl. ¶¶ 129, 131, 135, 138.)

Plaintiffs' argument that Robinhood was required to disclose single-month fluctuations in June for these isolated metrics flouts well-settled law that there is no duty to disclose intra-quarter developments and would fundamentally upend the reporting periods and disclosure regime established by the United States Securities and Exchange Commission ("SEC").  Nor was Robinhood required to report partial results for the month of July (*i.e.*, the first month of Q3), particularly where Robinhood accurately reported historical results (Q1 and Q2 2021) and expressly warned about future declines (including for Q3 2021 and beyond).  Indeed, the fact that Robinhood accurately reported its historical results and expressly told investors that it expected a significant decline in Q3 2021 defeats Plaintiffs' claims.

To begin, Plaintiffs' Item 105 argument is based on a fundamental misunderstanding of that regulation.  Item 105 requires disclosure of "risk factors"—that is, a company must identify categories of risks that it faces.  Robinhood satisfied Item 105 by including extensive disclosures regarding the factors that made investing in Robinhood risky.  (Prospectus at 35-110.)  Among other things, Robinhood explained the risks associated with declining customer engagement and

CASE NO. 3:21-cv-09767-EMC                REPLY BRIEF ISO MOTION TO DISMISS

declining trading volume.  A single-month, intra-quarter decline is not a "risk factor" under Item 105 and Plaintiffs fail to cite a single case suggesting otherwise.  (*See* Section I.A.1.)

Plaintiffs also do not state a claim under Item 303.  Plaintiffs fail to cite a single case holding that a one- or even two-month decline in a performance indicator constitutes a "trend" under Item 303.  That is because such a short-term fluctuation is not a "persistent" trend of the kind that must be disclosed.  Moreover, Item 303 requires only the inclusion of Management Discussion & Analysis ("MD&A") of the financial statements reported in the Offering Documents (*i.e.*, the Statements of Operations and Balance Sheets for FY 2019, FY 2020 and Q1 2021).  Robinhood did so, and Plaintiffs do not argue otherwise.  Plaintiffs also continue to disregard Robinhood's explicit disclosure that business had softened in the final weeks of Q2 and first weeks of Q3.  Specifically, Robinhood twice disclosed that "trading activity was particularly high during the first two months of the 2021 period [*i.e.*, April and May 2021], returning to levels more in line with prior periods during the last few weeks of the quarter ended June 30, 2021, and remained at similar levels into the early part of the third quarter."  (Prospectus at 31, 137.)  Robinhood further warned that it expected declines in the quarter in which the IPO occurred:  "We expect our revenue for the three months ending September 30, 2021 to be lower, as compared to the three months ended June 30, 2021, as a result of decreased levels of trading activity relative to the record highs in trading activity, *particularly in cryptocurrencies*, during the three months ended June 30, 2021, and expected seasonality."  (*Id*. (emphasis added).)  Robinhood also disclosed that it "expect[ed] the growth rates in revenue, *MAU*, AUC and Net Cumulative Funded Accounts to decline in future periods, and such declines could be significant."  (*Id*. (emphasis added).)  Plaintiffs' Item 303 argument fails.  (*See* Section I.A.2.)

Plaintiffs' half-hearted assertions that certain statements in the Offering Documents misleadingly predicted growth in the third quarter of 2021 also fail.  None of the statements Plaintiffs identify suggested that Robinhood expected growth in Q3 2021.  To the contrary, Robinhood explicitly warned investors of expected declines.  (Mot. at 23-24.)  The identified disclosures are also non-actionable forward-looking risk statements, statements reporting accurate historical performance and statements of corporate optimism.  (*See* Section I.B.)

2

Plaintiffs' claims should be dismissed with prejudice.  (*See* Section II.)

## ARGUMENT

**I.  PLAINTIFFS DO NOT PLEAD A CLAIM UNDER EITHER SECTION 11 OR SECTION 12(a) OF THE SECURITIES ACT.**

The securities laws do not require a company to disclose every business event.  *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).  Rather, disclosure of even a material event is required only if (1) the company has an affirmative duty to disclose, such as one imposed by SEC regulation or (2) nondisclosure would render affirmative statements misleading.  *Id.*  As a matter of well-settled law, Robinhood did not have to disclose intra-quarter fluctuations in certain performance metrics under either theory (particularly when the decline occurred during a quarter for which MD&A was not even required).  Plaintiffs fail to state a claim.

> A.  Robinhood Did Not Have a Duty to Disclose.

>> *1.  Robinhood Did Not Violate Item 105.*

Plaintiffs fundamentally misunderstand Item 105 and cite no law to support their claim that it was violated.  Item 105 requires disclosure of "the material factors that make an investment in the registrant or offering speculative or risky."  17 C.F.R. § 229.105.  These are referred to as "risk factors."  Item 105 does not apply to fluctuations in financial metrics.

Robinhood satisfied Item 105's requirements by providing nearly 75 pages of extensive Risk Factor disclosures (Prospectus at 35-110), including disclosures regarding the specific risks related to customer retention and declines in trading activity that Plaintiffs allege came to pass.  For example, an entire Risk Factor section is dedicated to risks related to retaining existing customers or attracting new customers, including the risk that customers might be dissatisfied with the customer service Robinhood provided.  (*Id.* at 60-62.)  Robinhood also specifically warned that "[a]ny significant loss of customers or a significant reduction in their use of our platform could have a material impact on our trading volumes and revenues, and materially adversely affect our business, financial condition and results of operations."  (*Id.* at 62.)  Robinhood further warned that it had grown rapidly and that its financial performance might suffer if it was unable to manage its growth effectively, including by retaining existing

3

customers, attracting new customers and providing adequate customer support. (*Id.* at 35-36.) Robinhood also cautioned that its performance depended upon, and could be harmed by declines in, uncertain factors including the company's development and improvement of customer support functions, the volume of cryptocurrency trading and the volume of trading activity generally. (*Id.* at 38-39.)

The alleged declines in monthly active users ("MAU") and crypto trading volume for a one-month period before the IPO are not "risk factors." Risk factors are the underlying factors that could *cause* material future adverse events (such as the risk of customers engaging less with the Robinhood platform), not present performance indicators (such as a decline in MAU for June 2021). *See City of Pontiac Policemen's and Firemen's Retirement Sys. v. UBS AG*, 752 F.3d 173, 183-84 (2d Cir. 2014) (affirming dismissal of Item 105 claim (then known as Item 503(c)) where company disclosed underlying risk factor without details of existing facts).

Plaintiffs cite *Mingbo Cai v. Switch, Inc.*, No. 2:18-cv-1471, 2019 WL 3065591, at *6 (D. Nev. July 12, 2019), but that case is inapplicable. It was not about the non-disclosure of specific financial data (as alleged here): it was a case involving only "boilerplate risk factors." *Id.* Here, there is no allegation—nor could there be—that Robinhood's extensive risk disclosures were boilerplate or insufficient to put investors on notice that the risk existed. *See In re Pivotal Sec. Litig.*, No. 3:19-cv-03589, 2020 WL 4193384, at *8 (N.D. Cal. July 21, 2020) (dismissing Item 105 claims). The other cases that Plaintiffs cite confirm that they do not have an Item 105 claim. Plaintiffs cite two cases for the proposition that a later-in-time disclosure accompanied by a decline in stock price is evidence that information omitted from earlier disclosures was material. (Opp. at 17-18) (citing *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 16 (2d Cir. 2011); *Fresno Cnty. Emps' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 550 (S.D.N.Y. 2017)). But these cases are about the materiality element and do not address Item 105 at all, let alone whether something is a risk factor. *In re Twitter, Inc. Securities Litigation* (Opp. at 15) is also about materiality. There, Twitter made an affirmative statement ("our MAU trend has already turned around"), which the court found was materially misleading if, as alleged, Twitter's MAU metric was in fact declining at the time. No. 16-5314, 2020 WL 4187915, at *9-

10 (N.D. Cal. Apr. 17, 2020), *reconsideration denied,* 2021 WL 4166725 (N.D. Cal. Sept. 14, 2021). Robinhood made no such affirmative statements about its MAUs or crypto volumes.

Plaintiffs fare no better in arguing Robinhood violated Item 105 by failing to disclose a supposed departure from its stated business strategy. (Opp. at 18.) For instance, Plaintiffs claim that allegedly negative customer survey data and the fact of a FINRA fine somehow show that Robinhood had a duty under Item 105 to disclose that it "was actively driving away customers." (*Id.*) But Plaintiffs identify no risk factors that Robinhood failed to disclose. Beyond the risk factors described above regarding customer retention, Robinhood disclosed regulatory investigations including the FINRA fine. (*See, e.g.*, Prospectus at 29 n.2.) Plaintiffs' vague concern that Robinhood was departing from its strategy is therefore insufficient to state a claim under Item 105 given the presence of risk factors specifically addressing the very concerns Plaintiffs allege were omitted. *See Pivotal*, 2020 WL 4193384, at *8.

### 2. Robinhood Did Not Violate Item 303.

Plaintiffs likewise misunderstand Item 303, which requires Management Discussion & Analysis of the financial statements reported in the Offering Documents. 17 C.F.R. § 229.303. Plaintiffs fail to state an Item 303 violation for three independent reasons.

*First*, Plaintiffs have failed to allege a sufficiently persistent "trend." A trend under Item 303 is an "*observed pattern that accurately reflects persistent conditions* of the particular registrant's business environment." *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1263 (N.D. Cal. 2019) (emphasis added); *see also Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1191 (11th Cir. 2002) (requiring disclosure under Item 303 only of observed patterns "accurately reflect[ing] persistent conditions"). Plaintiffs' allegations confirm that, through the last full month before the IPO, MAU was the only KPI that declined. (Am. Compl. ¶¶ 129, 135, 138.) As to MAU, Plaintiffs allege only a single month decline (June), which followed increases in April and May. (*Id.* ¶ 129.)[1] That leaves the partial month of July. But by

---

[1] Robinhood disclosed the expected MAU for June and revenue for Q2, which Plaintiffs concede were accurate. (Prospectus at 30.) Readers knew the quarterly trend, from March to June 2021, and could not have been misled by not knowing interim metrics for April or May. A fourth KPI, ARPU (*see* Am. Compl. ¶ 134) is a quarterly metric. ARPU is calculated from

CASE NO. 3:21-cv-09767-EMC                      REPLY BRIEF ISO MOTION TO DISMISS

the time of its IPO, Robinhood did not have results for July, as the month was not yet over. MAU is defined as the number of *active* users. A user who takes a certain action on the Robinhood platform is counted as a monthly active user regardless of when in the month that action occurs. (Prospectus at 27 n.2.) As a result, MAU may change significantly even during a short time period and Robinhood could not have known at the time of the IPO what the final July MAU figure would be.[2] Thus, at the time of the IPO, there was no persistent trend of decline in the KPIs. (*See* Exhibit A.) There was a one-month decline in one metric (MAU in June, within a quarter of overall growth). A single data point is not a trend, let alone a persistent one.[3]

Numerous cases confirm that such short and inconsistent periods of fluctuation are insufficient as a matter of law to constitute trends for Item 303. *See Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 218 (5th Cir. 2004) (a five-month "decline in natural gas prices [did not yet constitute] a trend" requiring disclosure); *In re Coty, Inc. Sec. Litig.*, No. 14-cv-919, 2016 WL 1271065, at *7 (S.D.N.Y. Mar. 29, 2016) (collecting cases in which plaintiffs failed to allege trends because they "refer to occurrences that were "almost contemporaneous with the IPO" or that "lasted two months only""); *Blackmoss Invs.*, 2010 WL 148617, at *10 (same); *Nguyen v. MaxPoint Interactive, Inc.*, 234 F. Supp. 3d 540, 546-57 (S.D.N.Y. 2017) (same).

Plaintiffs cannot avoid this legal conclusion by claiming it is a factual question that requires discovery. (Opp. at 20.) This Court has dismissed claims based on such short declines and inconsistent movements. *See In re Vocera Commc'ns, Inc. Sec. Litig.*, C-13-3567, 2015 WL 603208 (N.D. Cal. Feb. 11, 2015) (Chen, J.) (holding plaintiffs failed to state a claim under Item

[2] quarterly revenue and NCFA (Prospectus at 28), which were each disclosed for Q2 in the Offering Documents (*id*. at 30), so a reader could determine the Q2 decline in ARPU.

[2] Plaintiffs also repeatedly conflate an alleged decline in MAU with customers leaving Robinhood. (*See, e.g.*, Opp. at 21 (claiming Robinhood "had lost" customers).) A decline in MAU means fewer customers were engaging, not that they were leaving. Robinhood advised that MAU is sometimes correlated with but is "not indicative of the performance of revenue and other key performance indicators." (*Id.*) Plaintiffs' arguments are further belied by the fact that NCFA remained stable between May and July 2021. (Am. Compl. ¶ 138.)

[3] Even if Plaintiffs had alleged a two-month decline in MAU—and they have not—that would be insufficient. *Blackmoss Invs. Inc. v. ACA Capital Holdings, Inc.*, No. 07-cv-10528, 2010 WL 148617, at *10 (S.D.N.Y. Jan. 14, 2010) ("As a matter of law, a two[-]month period of time does not establish a 'trend' for purposes of the disclosures required by Item 303.").

CASE NO. 3:21-cv-09767-EMC                                      REPLY BRIEF ISO MOTION TO DISMISS

303 for purchases in the IPO because as of that time, based on an intra-quarter decline compared to quarterly projections, "there had not been a meaningful pattern of disappointing sales"); *see also infra Turkcell*, 202 F. Supp. 2d at 12 (same).  Plaintiffs' cases are all distinguishable because they involved consistent trends over much longer periods.  *See, e.g.*, *Pirani v. Slack Tech., Inc.*, 445 F. Supp. 3d 367, 374 (N.D. Cal. 2020) (noting Slack failed to meet its uptime guarantee for 7 out of 12 months in year prior to offering because of undisclosed vulnerabilities).

*Second*, Item 303 does not apply to periods more recent than the financial statements in the offering documents.  The financial statement periods in the Offering Documents were FY 2019, FY 2020 and Q1 2021.  Robinhood satisfied Item 303 by including Management Discussion & Analysis of the Statements of Operations and Balance Sheets covering each period. *See* 17 C.F.R. § 210.3-01(a) (requiring balance sheets for the two prior fiscal years and a balance sheet "as of an interim date within [135 days] of filing the registration statement").  Plaintiffs do not allege that Robinhood failed to disclose any trend with respect to those financial statements.  Instead, Plaintiffs argue that Item 303 applies to *any* trend of which management is aware even if it does not relate to the reported financial periods.  (Opp. at 20.)  That is not true.  Item 303 and its accompanying instructions explain that "[t]he discussion and analysis must be *of the financial statements* and other statistical data that the registrant believes will enhance a reader's understanding of the registrant's financial condition."  17 C.F.R. § 229.303(a) (emphasis added); *see also* 17 C.F.R. § 229.303, *Instructions to paragraph (b)* ("Generally, the discussion must cover the periods covered by the financial statements include in the filing.");[4] SEC, *Management's Discussion and Analysis of Financial Condition and Results of Operations*, 54 Fed. Reg. 22,427, 22,428 (May 24, 1989) ("The Item asks management to discuss the dynamics of the business *and to analyze the financials*.") (emphasis added).  These financial statements report annual or quarterly data.  Accordingly, courts have recognized that there is no obligation, under Item 303 or otherwise, to disclose intra-quarter developments.  *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1418-19 (9th Cir. 1994) (dismissing claims premised on

---

[4] The SEC instructions specify particular circumstances in which the MD&A may cover a *shorter* period than the financial statements, but none in which (as Plaintiffs contend here) the MD&A must cover a *longer* period.  *See* 17 C.F.R. § 229.303, *Instructions to paragraph (b)*.

CASE NO. 3:21-cv-09767-EMC                REPLY BRIEF ISO MOTION TO DISMISS

nondisclosure of declining sales data for quarter in progress); *Nguyen*, 234 F. Supp. 3d at 546-47 (same); *In re Donna Karan Int'l Sec. Litig.*, No. 97-cv-2011, 1998 WL 637547, at *10-12 & n.12 (E.D.N.Y. Aug. 14, 1998) (same, despite allegations that "a negative costs-sales trend" "existed at the time of the IPO").

Nor was Robinhood obligated to disclose the alleged declines in KPIs for the pre-IPO portion of July. *In re Turkcell Iletisim Hizmetler A.S. Sec. Litig.* is instructive. 202 F. Supp. 2d 8, 12-13 (S.D.N.Y. 2001). There, the defendant conducted an offering on July 10 without disclosing its financial results for the second quarter (ending June 30). The court dismissed plaintiffs' Item 303 claims, recognizing that disclosure was unnecessary given the timing of SEC reporting periods (namely, second-quarter results need not be reported until August). The court explained, "The disclosure structure set out by the SEC and the case law recognizes how unworkable and potentially misleading a system of instantaneous disclosure out of the normal reporting periods would be. Moreover, acceptance of plaintiffs['] position would require the immediate release of data without the benefit of reflection or certainty provided by the traditionally recognized reporting periods." *Id*. Requiring Robinhood to disclose an alleged decline for the partial month of July is likewise irreconcilable with SEC reporting periods.

In response, Plaintiffs cite three cases, none of which required disclosure of intra-quarter developments. In *Steckman v. Hart Brewing, Inc.*, the court observed in dicta that "a slowdown after a period of growth might be a trend." 143 F.3d 1293, 1297 (9th Cir. 1998). But the court went on to dismiss the Item 303 claims because the alleged intra-quarter increase in Selling, General and Administrative Expenses (a measure required for income statements under 17 C.F.R. 210.5-03) was consistent with seasonality and insufficient to qualify as a trend. *Id*. at 1297-98. *Steckman* did not consider the argument that Item 303 is limited to the required financial statements and does not hold that real-time disclosures are required, as Plaintiffs contend. Any contrary reading would be inconsistent with Ninth Circuit precedent rejecting a duty to disclose intra-quarter developments, *see Worlds of Wonder*, 35 F.3d at 1418-19, and SEC reporting periods.

Plaintiffs' next case is *In re Facebook, Inc. IPO Sec. and Derivative Litig,* 986 F. Supp.

CASE NO. 3:21-cv-09767-EMC                                    REPLY BRIEF ISO MOTION TO DISMISS

2d 487, 511 (S.D.N.Y. 2013). But the *Facebook* court itself limited this decision on reconsideration, stating that the court "explicitly did not impose a general duty to make intra-quarter disclosures." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 538 (S.D.N.Y. 2014). The court also recognized that "the facts of [the] case are highly unique." *Id.* For example, while Facebook had risk factors about potential MAU declines, *see* 986 F. Supp. 2d at 495-96, it did not publicly disclose (as Robinhood did, *see* Prospectus at 31) that it saw KPI declines, *see* 986 F. Supp. 2d at 498-503. The alleged revenue declines in *Facebook* were also far more significant than the single-month decline in MAU alleged here. *Id.* Accordingly, the court declared that its prior "holdings . . . were narrow," and "[t]he uniqueness of th[e] case undermines [any] contention that [the prior decision] opens the door for issuers and underwriters to be subject to suit for not providing intra-quarter updates." 986 F. Supp. 2d at 538 (internal quotation marks omitted). Plaintiffs' final case, *Litwin v. Blackstone Grp., L.P.*, is entirely unavailing. 634 F.3d 706 (2d Cir. 2011). There, the allegedly omitted declines in the real estate market began *eighteen months* before the IPO. *Id.* at 710, 722.

*Third*, while Plaintiffs assert that Robinhood told potential investors that it had achieved "massive, durable growth" (Opp. at 1), Robinhood actually disclosed in the Offering Documents that trading activity, including cryptocurrency trading volume, had been particularly high in April and May but had decreased in late June and remained at lower levels into July. In particular, Robinhood twice cautioned that "trading activity was particularly high during the first two months of the 2021 period [*i.e.*, April and May 2021], returning to levels more in line with prior periods during the last few weeks of the quarter ended June 30, 2021, and remained at similar levels into the early part of the third quarter." (Prospectus at 31, 137.)[5] Robinhood further explained that it expected this decline in trading activity to impact its Q3 2021 results, warning, "We expect our revenue for the three months ending September 30, 2021 to be lower, as compared to the three months ended June 30, 2021, as a result of decreased levels of trading

[5] Because Robinhood's revenue is closely tied to trading volume (Prospectus at 1) and revenues in Q1 and Q2 2021 were particularly high relative to prior periods with lower trading volume (*id.* at 136, 155), this disclosure put investors on notice not only that Robinhood expected revenue declines in Q3, but that such declines could be significant.

9

activity relative to the record highs in trading activity, particularly in cryptocurrencies, during the three months ended June 30, 2021, and expected seasonality." (*Id*.)  Robinhood also provided a year-over-year comparison between its KPIs in the estimated Q2 2021 results and actual Q2 2020 performance, and cautioned that it expected a comparison of KPIs from Q3 2021 and Q3 2020 would show lower year-over-year growth "due to the exceptionally strong interest in trading, particularly in cryptocurrencies, we experienced in the three months ended June 30, 2021 and seasonality in overall trading activities." (*Id*.)  Robinhood also warned that its "operating metrics have fluctuated from quarter to quarter, including due to movements and trends in the underlying markets, changes in general economic conditions and fluctuations in trading levels." (*Id*. at 37.)  Any reasonable investor would have understood that Robinhood was experiencing headwinds in the month of the IPO.

Even if Item 303 extends as broadly as Plaintiffs claim—and it does not— those disclosures were more than sufficient.  *See Donna Karan*, 1998 WL 637547, at *11 (dismissing Item 303 claim regarding negative sales trend allegedly known pre-IPO where defendant disclosed that it expected declining net revenues and increasing costs in that quarter); *In re Tempur Sealy Int'l, Inc. Sec. Litig.*, No. 17-cv-2169, 2019 WL 1368787, at *10-11 (S.D.N.Y. Mar. 26, 2019) (dismissing Item 303 claim because defendants could not have expected omitted trends to affect results distinct from effects caused by disclosed trends).

**B.      Robinhood Did Not Make False or Misleading Statements.**

Plaintiffs also pay lip service to their claim that certain affirmative statements in the Offering Documents were rendered misleading because Robinhood did not disclose the alleged intra-quarter declines in MAU and crypto trading volume.  (Opp. at 21-25.)  These affirmative misrepresentation claims fail.[6]

**1.      *Robinhood Did Not Make Material Misrepresentations About the Potential for a Decline in KPIs.***

Plaintiffs first argue that because Robinhood knew that its MAU declined in June 2021, it

---

[6] Plaintiffs do not defend their claims that Robinhood's risk factor disclosures concerning cybersecurity incidents or service outages were misleading (Mot. at 17-19) and have therefore abandoned them.  *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014).

CASE NO. 3:21-cv-09767-EMC                REPLY BRIEF ISO MOTION TO DISMISS

was misleading for Robinhood to include a risk factor warning investors that it "may not continue to grow on pace with historical rates" and to report (truthfully) that it had "experienced a significant increase in revenue" and other KPIs since March 2020 (*i.e.*, in the 15 months before the offering). (Opp. at 21.) This argument is wrong as a matter of law and contradicted by Robinhood's stated predictions of a business slowdown in Q3 2021.

As a matter of law, a "risk factor" warning that a financial measure may fall in the future does not imply that the measure has not fluctuated in the past. *See, e.g.*, *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1207 (9th Cir. 2016) (holding "nothing misleading" about describing deterioration in real-estate market as "risk factor" that "could" affect future revenue "when in fact that risk had already come to fruition"); *DeMaria v. Andersen*, 318 F.3d 170, 181-82 (2d Cir. 2003) (same for warning that company "may incur operating losses in the future" even though company did not disclose "actual first quarter losses" in electronic prospectus). To hold such warnings actionable would penalize cautionary statements and potentially create liability for issuers conscientiously disclosing the possibility that performance indicators may be volatile.

*Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 984 (9th Cir. 2008) is inapposite. There, the issuer failed to inform investors that its contracts could be cancelled at any time and that it had already received four stop-work orders. Instead, the issuer acknowledged only the possibility of contract cancellations and recorded "the uncompleted portions of existing contracts" as a "backlog," implying that the company would receive future revenue from the cancelled contracts. *Id.* at 985-86. Given these facts, the court found it was misleading for the issuer to state that "[w]e may experience significant contract cancellations that were previously backlogged." *Id*. at 986. Here, Plaintiffs do not allege any discrete events that Robinhood failed to disclose but rather argue that Robinhood misleadingly implied that its financial metrics had never fluctuated in the past. That claim fails under *Lloyd*. 811 F.3d at 1207 (holding "nothing misleading" about warning that declines in real estate market "could" impact business when declines had already begun). The remaining cases Plaintiffs cite all involved *dismissals* of claims based on risk factor disclosures. *See, e.g.*, *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1407 (9th Cir. 1996) (dismissing claim premised on risk disclosure "there can be no assurance"

11

risk would not materialize); *In re Apple Inc. Sec. Litig.*, No. 19-cv-2033, 2020 WL 2857397, at *17 (N.D. Cal. June 2, 2020) (same for competition and economic condition risk disclosures).

Robinhood's statements were also in no way misleading given the disclosure that its "operating metrics have fluctuated from quarter to quarter" and it expected KPI growth rates "to decline in future periods." (Prospectus at 37.) Like the defendants in *Lloyd* and *DeMaria*, Robinhood expressly disclosed that its growth had already begun to slow. As explained above (pp. 9-10), Robinhood told investors multiple times that cryptocurrency trading activity had declined, that trading activity had fallen from its "record highs" to "levels more in line with prior periods during the last few weeks of" Q2 2021 and that it "expect[ed] our revenue for the three months ending September 30, 2021 to be lower, as compared to the three months ended June 30, 2021." (Prospectus at 31.) Robinhood's further caution that it "may not continue to grow on pace with historical rates" (*id.* at 37) could not possibly have been misleading.

### 2. Robinhood Did Not Make Material Misrepresentations About the Growth of Its User Base.

Plaintiffs next assert that Robinhood represented that its user base "was growing," which they claim was misleading because of the alleged decline in MAU. (Opp. at 9, 22.) This distorts the disclosures. The Offering Documents mentioned *past* growth and made some limited predictions about the future, but Robinhood did *not* represent that the user base "*was* growing."

In an effort to avoid the real disclosures and make it appear that Robinhood created an impression of continuous growth, Plaintiffs rely on statements (i) accurately reporting historical KPI data, (ii) predicting a lower rate of *year-over-year* KPI growth in the quarter of the IPO and (iii) expressing Robinhood's belief that the company was "well-positioned." As a matter of law, none of these statements is actionable. *First*, Plaintiffs point to charts and tables documenting MAU growth in Q2 2021. (Opp. at 22.) Plaintiffs do not allege that this historical data was inaccurate. Instead, Plaintiffs claim the accurate historical data was misleading because it did not disclose the alleged intra-quarter decline in June. As a matter of law, however, "[a]ccurately reported historical information, such as sales and profit data, is not actionable." *Fisher v. Acuson Corp.*, No. C93-20477, 1995 WL 261439, at *9 (N.D. Cal. Apr. 26, 1995); *accord In re Fastly,*

*Inc. Sec. Litig.*, No. 20-cv-6024, 2021 WL 5494249, at *14 (N.D. Cal. Nov. 23, 2021).

Plaintiffs highlight cases involving a company's "represent[ations] that its customer base was growing or stable when, in fact, it was falling." (Opp. at 23.) But tellingly, those were all cases in which a company affirmatively represented that it was experiencing *ongoing* growth when it was not. *See, e.g.*, *Apple*, 2020 WL 2857397, at *11 (allegations of declining iPhone sales "directly contradict[ed]" Apple's representations of increasing sales over the same period); *In re OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1109 (N.D. Cal. 2013) (allegations that the company "had lost substantial ground" contradicted defendant's representations of "unchanged" market share); *Twitter*, 2020 WL 4187915, at *10 (allegations that MAUs were declining contradicted defendant's representation that "our MAU trend has already turned around"). Here, Robinhood never stated that it was experiencing ongoing growth at the time of the IPO. To the contrary, Robinhood explicitly cautioned that it "anticipate[d] the rate of growth in these Key Performance Metrics will be lower for the period ended September 30, 2021," and disclosed that trading activity had already declined. (Prospectus at 31.) And, as explained above (*supra* p. 6 n.2), the one-month MAU fluctuation prior to the IPO demonstrated *only* that users were less active in June—consistent with Robinhood's disclosure that trading was down—not that they were leaving the platform.

Plaintiffs next argue that an issuer must sometimes disclose adverse facts to render accurate information not misleading and that Robinhood therefore was obliged to disclose the alleged decline in MAU from May to June. Yet Plaintiffs cite no case in which omitting an interim fluctuation in a performance indicator measure was held to be misleading. Instead, Plaintiffs' own cases confirm that "descriptions of historical results have generally been found not to require disclosure of adverse factors." *Apple*, 2020 WL 2857397, at *10. This is especially true in the context of intra-quarter results, which neither the SEC nor courts require issuers to report. (Mot. at 21.) *Khoja v. Orexigen Therapeutics* does not hold to the contrary. 899 F.3d 988, 1015 (9th Cir. 2018). That case simply held it was misleading to disclose positive interim results of a clinical trial while withholding later adverse data from the same trial. *Id*.

*Second*, Robinhood's statement that "the rate of growth in [KPIs] will be lower for the

13

period ended September 30, 2021, as compared to the three months ended June 30, 2021" was not misleading.  Plaintiffs continue to mischaracterize the statement, arguing that it "impl[ied] continued growth" in those metrics during Q3 2021.  (Opp. at 22.)  As Defendants explained, the statement does not predict quarter-over-quarter growth in Q3 2021.  It reflects a comparison between the year-over-year growth rate from Q3 2020 to Q3 2021 and the year-over-year growth rate from Q2 2020 to Q2 2021.  (Mot. at 21-22.)  Plaintiffs do not respond to this point.

Regardless, Plaintiffs' claim that this disclosure implied an expectation of quarter-over-quarter KPI growth in Q3 2021 is non-actionable under the bespeaks caution doctrine.  *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1088-91 (C.D. Cal. 2003).  Plaintiffs' citation to *Westley v. Oclaro, Inc.*, 897 F. Supp. 2d 902, 918 (N.D. Cal. 2012) (Chen, J.), is unavailing.  There, this Court held that a defendant's statement that it was *presently* experiencing strong demand was not forward-looking.  *Id*.  Here, by contrast, Robinhood's statement was explicitly forward-looking, concerning the rate of growth in Q3, when it was still early in the quarter.  And Robinhood included specific cautionary language regarding such forward-looking statements.  (Mot. at 22.)  Less than 30 days into the quarter, Robinhood could not see the future.  Even if (contrary to what Robinhood said) the company had estimated quarter-over-quarter *growth* in KPIs from its vantage as of July 28, 2021, the statement would still not be actionable.

*Third*, Plaintiffs claim Robinhood's statement that it "believe[d]" it was "well-positioned" was misleading in light of the alleged intra-quarter declines.  But, as explained further below, the statement is an archetypal example of non-actionable corporate optimism because it cannot be objectively verified.  *See In re Fusion-io, Inc. Sec. Litig.*, No. 13-cv-5368, 2015 WL 661869, at *15 (N.D. Cal. Feb. 12, 2015) (holding issuer's statement that it was "well positioned" was an "unactionable statement[] of mere puffery").

### 3.    *Robinhood's Statements About Building Deep, Loyal Customer Relationships Are Non-Actionable.*

Plaintiffs' final affirmative misrepresentation theory is that Robinhood misleadingly represented that "it was building deep, loyal customer relationships."  (Opp. at 24.)  In support, Plaintiffs rely on statements that Robinhood was "empowering a new generation of financial

14

consumers," "maintain[ing] strong relationships with our loyal customer base and earning customers' trust," and "taking a fresh, people-centric approach and creating a delightful, engaging customer experience." (Am. Compl. ¶¶ 143-144.) But those statements are all non-actionable statements of corporate optimism. *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) (holding non-actionable the statement "we believe our employee relations are good"); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1070 (N.D. Cal. 2010) (rejecting Section 11 claim based on statements of "brand loyalty and enthusiasm"). These "feel good monikers" are subjective and cannot support a securities claim. *Cutera*, 610 F.3d at 1111.

In response, Plaintiffs argue—in a single sentence—that the statements contain factual misrepresentations because those statements somehow assert that Robinhood was making "the stated investments" and "successfully building long term relationships with customers." (Opp. at 25.) But none of the statements describe any concrete investments. No reasonable investor could have understood the statements as making any factual representations about Robinhood's investments. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014) (dismissing as puffery statements not "capable of objective verification"). Plaintiffs cite no cases holding such statements are actionable. Plaintiffs' cases all concern statements of *fact*. *See, e.g.*, *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 967 (N.D. Cal. 2014) ) (Chen, J.) (finding actionable the statement that responses to address FDA concerns were "well underway" when little had been done). Moreover, those cases acknowledge that statements of corporate optimism are non-actionable. Contrary to Plaintiffs' assertion to the contrary (Opp. at 25), courts routinely dismiss claims on these grounds, recognizing that "professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014).

## II.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Because Plaintiffs' claims are inadequate as a matter of law, any further amendment would be futile and Plaintiffs' claims should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:  November 14, 2022

*/s/ Mark R. Conrad*

**CRAVATH, SWAINE & MOORE LLP**
Antony L. Ryan
Kevin J. Orsini
Brittany L. Sukiennik
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
aryan@cravath.com
korsini@cravath.com
bsukiennik@cravath.com

**CONRAD | METLITZKY | KANE LLP**
Mark R. Conrad (CA Bar No. 255667)
Liz Kim (CA Bar No. 295277)
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone:  (415) 343-7100
Facsimile:  (415) 343-7101
mconrad@conmetkane.com
lkim@conmetkane.com

*Attorneys for the Robinhood Defendants*

*/s/ Alexander K. Talarides*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

James N. Kramer
Alexander K. Talarides
405 Howard Street
San Francisco, California 94105
Telephone:  (415) 773-5700
Facsimile:   (415) 773-5759
Email:       jkramer@orrick.com
             atalarides@orrick.com

- and -

Darrell S. Cafasso (*Admitted Pro Hac Vice*)
Jennifer Keighley (*Admitted Pro Hac Vice*)
51 West 52nd Street
New York, NY 10019
Telephone:  (212) 506-5000
Facsimile:   (212) 506-5151
Email:       dcafasso@orrick.com
             jkeighley@orrick.com

*Attorneys for the Underwriter Defendants*

CASE NO. 3:21-cv-09767-EMC                    REPLY BRIEF ISO MOTION TO DISMISS

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on November 14, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and, pursuant to Civil Local Rule 5(h)(3), that each of the signatories to the document have concurred in its filing.  I further certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

Dated:  November 14, 2022

*/s/ Mark R. Conrad*
Mark R. Conrad
(CA Bar No. 255667)